# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORNERSTONE RESIDENCE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 17-706 |
| ) | Judge Nora Barry Fischer |
| THE CITY OF CLAIRTON, ) | |
| PENNSYLVANIA and GEORGE ) | |
| GLAGOLA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

This matter is before the Court on Plaintiff Cornerstone Residence, Inc.'s ("Cornerstone") Motion for Reconsideration, its Brief in Support, Defendants the City of Clairton and George Glagola's ("Defendants") opposition thereto, and Cornerstone's Reply. (*See* Docket Nos. 44, 45, 47, 50). Cornerstone urges the Court to reconsider its November 8, 2017 Memorandum Opinion which granted the Defendants' motion and dismissed Cornerstone's Amended Complaint alleging violations of the Fair Housing Amendments Act. (Docket Nos. 44, 45, 50). Specifically, Cornerstone contends that the Court should grant it leave to amend its claim for disparate treatment to allege that it would be futile to pursue an appeal to the Zoning Hearing Board and that the Court should reconsider its dismissal of the facial challenge to Clairton's Zoning Ordinance and its interpretation of the Treatment Center "use" set forth therein. (*Id.*). Defendants oppose the request for reconsideration and advocate that the Court's decision should stand. (Docket No. 47). After careful consideration of the parties' arguments and for the following reasons, Cornerstone's Motion [44] is DENIED.

As the parties are familiar with the facts of this matter, which are fully detailed in the Court's Memorandum Opinion, (Docket No. 42), the Court initially turns to the governing legal

1

standards. To this end, motions for reconsideration[1] "are granted sparingly '[b]ecause federal courts have a strong interest in finality of judgments.'" *Jacobs v. Bayha*, 2011 WL 1044638, at *2 (W.D. Pa. Mar. 18, 2011) (quoting *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 938, 943 (E.D. Pa. 1995)) (emphasis added). "Because of the interest in finality, at least at the district court level ... the parties are not free to relitigate issues the court has already decided," *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998) (citing *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992)), to express disagreement with the Court's rulings, *see El v. City of Pittsburgh*, Civ. A. No. 15-834, 2017 WL 4310233, at *2 (W.D. Pa. Sept. 28, 2017) (citations omitted), or to raise arguments that a party had the opportunity to present before the Court's decision, *see United States v. Dupree*, 617 F.3d 724, 732–33 (3d Cir. 2010) (quotations omitted). Rather, the purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). The moving party bears a heavy burden to demonstrate that an order should be reconsidered and the Court will only grant such a motion if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café*, 176 F.3d at 677 (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

---

[1] This Court's Practices and Procedures explicitly state that "[a]ny motions for reconsideration shall be filed within seven (7) days." *See Practices and Procedures of Judge Nora Barry Fischer* at § II.M, *available at:* http://www.pawd.uscourts.gov/sites/pawd/files/PandPJudgeNoraBarryFischer.pdf (eff. 9/19/17). Cornerstone filed its motion for reconsideration <u>four weeks</u> after the Court's dismissal on November 8, 2017 but has not specified any procedural rule pursuant to which it is seeking reconsideration nor made any effort to demonstrate that the Court's practice rule should not control. (*See* Docket Nos. 44, 45, 50). Defendants did not oppose the motion for this reason and the Court has set forth several reasons why the motion has been denied, but it could alternatively be denied as untimely. The Court further comments that Cornerstone's delays in seeking reconsideration undermine its position attacking the Defendants' lack of an immediate response to its latest zoning application.

In this Court's estimation, Cornerstone has failed to meet its heavy burden to demonstrate that the Court should reconsider its Memorandum Opinion and Order as it has not pointed to any intervening changes in the controlling law; new evidence which was not available at the time of the decision; or clear errors of fact or law creating a manifest injustice. *See id.* Instead, Cornerstone merely expresses its disagreement with the Court's decision, and makes a series of arguments that could have been raised prior to the Court disposing of the matter; none of which support reconsideration. *See Haynos v. Siemens Water Techs. Corp.*, Civ. A. No. 12-173, 2012 WL 6018819, at *1 (W.D. Pa. Dec. 3, 2012) (citing *E.E.O.C. v. U.S. Steel Corp.*, Civ. A. No. 10–1284, 2012 WL 1150799, at *6–7 (W.D. Pa. Apr. 5, 2012)) ("motions for reconsideration should not be used by parties as an attempt to reargue or re-litigate old matters or to express disagreement with a Court's ruling."). Cornerstone lodges distinct challenges to the Court's dismissal of its claims on ripeness grounds under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6), and the Court now briefly explains why reconsideration is denied as to each claim, in turn.

On the ripeness issue, the Court held that Cornerstone's disparate treatment claim seeking injunctive relief in the form of a Court order directing Clairton to issue Cornerstone an occupancy permit was premature and not ripe for judicial review because it failed to appeal the denial of its April 20, 2017 application to the Zoning Hearing Board. (Docket No. 42 at 17-20). As the Court pointed out, the Zoning Officer, Glagola, lacked the authority to issue a final decision on the application and such authority was expressly reserved for the Zoning Hearing Board under the Zoning Ordinance. (*Id.* at 20). The Court further noted that Cornerstone failed to demonstrate that its claim was ripe for review or that it would be futile to pursue the appeal to the Zoning Hearing Board because it simply filed this lawsuit rather than the required appeal.

3

(*Id.*). The Court thus dismissed this claim, without prejudice, pursuant to Rule 12(b)(1), as any challenge to the denial of the April 20, 2017 application was not ripe for adjudication.[2]

In its Motion for Reconsideration, Cornerstone seeks leave to file a Second Amended Complaint based, in part, on a series of events which occurred subsequent to the Court's issuance of its decision on November 8, 2017. (Docket Nos. 44, 45, 50). To this end, Cornerstone submitted a new zoning application dated November 9, 2017, to which Glagola responded via a letter dated December 6, 2017 denying such application "due to insufficient information." (*See* Docket No. 47 at Exs. 1, 2). Cornerstone recites the background of its prior application and dealings with Clairton and continues that those facts, coupled with the denial of the new application, constitute a "pattern of obstruction" on behalf of Clairton to prevent it from obtaining zoning approval. (Docket Nos. 44, 45, 50). With that said, Cornerstone adds in reply that it "would presently file an appeal to the Zoning Hearing Board if there was a decision to be appealed that may result in zoning approval" but that it would ostensibly prefer to pursue its facial challenge to the ordinance in this Court. (Docket No. 50 at 4). Defendants oppose any further amendment of the complaint because the matter has been appropriately dismissed and leave to amend would be futile. (Docket No. 47). The Court concurs with Defendants' assessment of this Motion.

Initially, Cornerstone's motion seeking leave to amend its complaint for a second time is both untimely and unsupported. Such request is untimely because Cornerstone did not request leave to file a Second Amended Complaint prior to the Court's dismissal, despite numerous opportunities to do so over the more than three months when the motion to dismiss was pending, (i.e., between July 27, 2017 and November 8, 2017), including in any of the four legal briefs

---

[2] The Court's dismissal on this basis should have come as no surprise to Cornerstone as it pointed out in an Order issued on June 23, 2017 denying its renewed motion for preliminary injunction that the claims asserted in the initial Complaint were not ripe for adjudication. (*See* Docket No. 19).

4

which it filed during that timeframe, (*see* Docket Nos. 24; 30; 32; 38). *See Dupree*, 617 F.3d at 732 (reconsideration is improper when a party should have raised an argument earlier). More importantly, however, is that Cornerstone has not supported its present request to amend with a proposed Second Amended Complaint, by attaching one to its filings or otherwise, a deficiency which the Court of Appeals has held is enough to defeat a motion seeking leave to amend. *See, e.g., U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) ("[A] 'bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought ...—does not constitute a motion within the contemplation of Rule 15(a).'") ((quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994)); *McWreath v. Range Res.—Appalachia, LLC*, 645 F. App'x. 190, 196 (3d Cir. 2016) ("[T]he failure to submit a draft amended complaint 'is fatal to a request for leave to amend.'") (quoting *Zizic*, 728 F.3d at 243). Beyond these procedural defects, the facts proffered by Cornerstone in its Motion, Brief and Reply, as well as Joyce Douglass' declaration, purport to set forth an entirely new claim arising from the denial of the November 9, 2017 application. (*See* Docket Nos. 44, 45, 50). But, this claim suffers from the same defects as the earlier one because Cornerstone has not appealed the denial of its new application to the Zoning Hearing Board in order to obtain a final decision on the zoning of the property, such that it is also not ripe for adjudication.[3] (*See* Docket No. 42 at 17-20).

Finally, the proffered facts simply do not support a claim that Defendants have engaged in any behavior which has obstructed or precluded Cornerstone from pursuing an appeal to the Zoning Hearing Board. (*See* Docket Nos. 44, 45, 50). To the contrary, Defendants brought this obvious defect to Cornerstone's attention in their first motion to dismiss filed on June 23, 2017,

---

[3] It also appears that the prior claim arising from the April 20, 2017 application is essentially moot as that application has been abandoned by Cornerstone in favor of the more recent one.

(Docket No. 13), the Court agreed with this position in an Order entered on that date, (Docket No. 19), and Defendants have consistently maintained this position throughout this litigation, (*see e.g.*, Docket Nos. 22, 23, 27, 35). Despite being on notice of the problem, Cornerstone has admittedly declined to file an appeal, based on the advice of counsel, for reasons that are largely unstated and from which the Court can only infer is a belief that federal litigation would proceed more quickly than the zoning appeal. (*See* Docket No. 50 at 4). While Cornerstone attempted to plead around the problem by asserting the facial challenge to the Zoning Ordinance, a claim which the Court found was ripe but dismissed for failure to state a claim, it has not stated a plausible claim that Defendants obstructed it from <u>appealing</u> the denials of either application to the Zoning Hearing Board. (*See* Docket Nos. 44, 45, 50). In this Court's estimation, Cornerstone cannot now complain that it is futile to file an appeal which has always been available to it but was (and continues to be) deliberately avoided. It also cannot seek reconsideration by citing legal authorities, from the Third Circuit or otherwise, which were issued several years before the Court's decision as the same does not constitute a change in the law justifying reconsideration. *See Max's Seafood Café*, 176 F.3d at 677. Accordingly, the Court denies Cornerstone's motion for reconsideration of the dismissal of its claim under Rule 12(b)(1) along with its corresponding request to amend.

Moving on to Cornerstone's facial challenge to the Treatment Center "use," the Court dismissed the claim on three alternative bases. In this regard, the Court held that the definition of the Treatment Center "use":

> (1) is unambiguous and legislates the housing of individuals with a "current addiction" to controlled substances who are not covered by the FHAA and were not among the prospective residents of Cornerstone;
>
> (2) is unambiguous and legislates a potential *impairment* of

>     current drug addiction or alcoholism but not the housing of handicapped (or disabled) individuals under the FHAA who also must demonstrate that such *impairment* "substantially limits one or more of such person's major life activities"; and,
>
> (3) is ambiguous but, when construed consistently with the remainder of the ordinance under applicable legal principles of Pennsylvania law, must be read to preclude a facial challenge given several express statements of Clairton's intent to comply with the FHAA, which the Court cited in its decision.

(*See* Docket No. 42 at 19-28). Given these rationales, the Court dismissed the facial challenge, with prejudice, under Rule 12(b)(6).

Cornerstone asserts that it is entitled to reconsideration because the Court allegedly made its rulings "outside the adversary process" relying on a point made by Defendants only in a footnote to their Reply Brief; reargues the merits of the Court's decision and interpretation of the ordinance; and, to its Reply Brief, attaches declarations of Tim Grealish and Joyce Douglass, in further support of its interpretation of the ordinance. (Docket Nos. 44, 45, 50). Defendants contest these points and oppose the Motion. (Docket No. 47). The Court agrees with the defense that reconsideration of the 12(b)(6) dismissal is not warranted.

At the outset, the declarations of Mr. Grealish and Ms. Douglass constitute matters outside the pleadings which cannot be considered by the Court when ruling on a Rule 12(b)(6) motion. (*See* Docket No. 42 at 12, n.2). Therefore, the Court will not rely upon these declarations as a basis to reconsider the dismissal of Cornerstone's disparate treatment claim for failure to state a claim. (*Id.*). Further, as the Court recounted in its decision, Pennsylvania law provides that unambiguous zoning ordinances are to be construed based on their plan meaning, *see* 1 Pa.C.S. § 1903, and if the ordinance is deemed ambiguous, the Court is to look to the ordinance as a whole, to determine the intent of the legislative body and to consider sources listed in 1 Pa. C.S. §1921, which does not include such third party declarations. (Docket No. 42

7

at 21-22). It is well established that a Zoning Hearing Board's "interpretation of a municipality's zoning ordinance is entitled to weight because it reflects the construction of a statute by an entity charged with its execution and application." *Omnipoint Commc'ns Enterprises, L.P. v. Zoning Hearing Bd. of Easttown Twp.*, 331 F.3d 386, 393 (3d Cir. 2003); *see also* 1 Pa. C.S. § 1921(c)(8). As noted, the Court lacks the Zoning Hearing Board's interpretation of the challenged ordinance because Cornerstone has not appealed the denial of its application to that entity. In any event, neither Mr. Grealish nor Ms. Douglass were involved in drafting the ordinance, (which was effective in 2014), such that their opinions construing the language would not be helpful to the Court's interpretation of the Ordinance. (*See* Docket Nos. 44-1 (noting that Grealish is an "intervention specialist" with 30 years' experience); 44-2 (noting that Douglass is a former state parole officer for over 20 years and now the executive director of Cornerstone)).

Next, the Court disagrees with Cornerstone's assertions that this matter was decided "outside the adversary process" or that the Court improperly relied upon a "new argument" raised by the defense in a footnote in their Reply Brief to reach its decisions without providing it with an opportunity to respond. (Docket Nos. 44, 45, 50). "It is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted." *Gilbert v. United States*, No. CV 14-243 (NLH), 2016 WL 4087274, at *4 (D.N.J. July 28, 2016) (quotation and citations omitted). "Even though a party generally may not raise a new argument for the first time in a reply brief, the trial court has discretion to consider new arguments." *Sabert Corp. v. PWP Indus., Inc.*, Civ. A. No. 14-6500 MAS, 2015 WL 5007838, at *1, n.3 (D.N.J. Aug. 20, 2015) (citations omitted). But, a party is not prejudiced by new arguments set forth in a Reply if it is provided the opportunity to file a Sur-Reply to address any such issues. *Cf. Baker v. City of Elizabeth, et al.*, 2017 WL 4220363, at *1, n.2

(D.N.J. Sept. 22, 2017) (purpose of a sur-reply is to respond to "any new argument raised in the reply."). Here, the Court expressly granted Cornerstone leave to file a Sur-Reply Brief upon its contention that Defendants "raised a new argument in their Reply," (Docket No. 28 at ¶ 1), and Cornerstone filed a Sur-Reply Brief which the Court reviewed and considered prior to dismissing this action. Therefore, as Cornerstone was expressly granted the opportunity to respond to any new arguments raised by Defendants in their Reply, its own failure to do so does not provide a basis for re-argument or reconsideration. *See Dupree*, 617 F.3d at 732 (reconsideration is improper when a party should have raised an argument earlier).

Regardless, the Court does not believe that Defendants' Reply Brief raised a "new argument" which was outside the scope of the issues raised in their initial Brief. To this end, Defendants explicitly argued that "Cornerstone fails to state a plausible claim because it fails to allege facts that Defendants' denial of its Application was 'because of' some discriminatory reason." (Docket No. 23 at 10 (citing *Cmty. Servs. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 178 (3d Cir. 2005)). The *Wind Gap* case is a precedential decision from the United States Court of Appeals for the Third Circuit which this Court is bound to follow. *See Wind Gap*, 421 F.3d at 178-79.

Given same, this Court reviewed *Wind Gap*, and quoted from passages wherein the Court of Appeals noted with respect to facial challenges under the FHAA that "'the most fundamental element of the claim is that plaintiff must demonstrate that defendant's alleged discrimination was 'because of a handicap.'" (Docket No. 42 at 21 (quoting *Wind Gap*, 421 F.3d at 178-79)). The Court of Appeals stated that sometimes this element is "glossed over" or "so obvious as not worthy of discussion" and then instructed District Courts to "'examine the language of the challenged regulation or policy' against the definition of 'handicap' under the Act in order to

9

determine if the 'handicap' is the *basis* for different treatment and therefore facially violates the FHAA." (Docket No. 42 at 21 (quoting *Wind Gap*, 421 F.3d at 178-79) (emphasis in original). In short, Defendants' initial argument appropriately pointed the Court to the prevailing caselaw and identified a flaw in Cornerstone's facial challenge to the ordinance, subjecting it to dismissal under Rule 12(b)(6). No more was required for Defendants to "tee up" the issue for a decision by the Court. *See Dupree*, 617 F.3d at 728 (quoting *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999) (a party "must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits.")). As the Court noted, Cornerstone's allegations that the Treatment Center "use" discriminated against its prospective residents because of their handicapped status were "conclusory" and after conducting the analysis suggested by the Court of Appeals in *Wind Gap* by comparing the language of the Ordinance to the definition of handicapped under the Act, the Court ultimately determined that Cornerstone failed to state a claim and granted the relief requested by Defendants. (Docket No. 42 at 19-28). This ruling is consistent with the Defendants' position set forth in their Reply Brief but would have been reached by the Court without it.

In light of this analysis, the Court concludes that all of Cornerstone's present challenges to the interpretation of the Treatment Center "use" should have been raised earlier and denies reconsideration on this basis. *See Dupree*, 617 F.3d at 732 (reconsideration is improper when a party should have raised an argument earlier). With that said, the Court is not persuaded by any of Cornerstone's arguments that it should reconsider its interpretation of the ordinance as the Court finds them to be without merit and, even if they were accepted, they simply do not undermine all three of the alternative interpretations offered by the Court in upholding the

legislation.  (*See* Docket No. 42 at 19-28).  However, the Court would add that § 337-38(G)[4] of the Zoning Ordinance also includes a provision outlining steps that an applicant must follow to seek a "reasonable accommodation" from Clairton based upon disabilities (or handicaps) of the residents which was not expressly cited in the Memorandum Opinion but lends further credence to the third alternative.  *See City of Clairton, Zoning Ordinance* § 337-38(G) (enacted 7/8/14).  Notably, any such "reasonable accommodations" must be reviewed and approved by the Zoning Hearing Board and not the Zoning Officer, Glagola.  *Id.*

For all of these reasons, Cornerstone's Motion for Reconsideration [44] is DENIED.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated: January 5, 2018

cc/ecf: All counsel of record.

---

4      Section 337-8 Provisions for Special Exemptions and Conditional Uses, provides, in pertinent part, that:
> G.    Persons With Disabilities.  After the City receives a complete written application, the Zoning Hearing Board shall grant a special exemption allowing modifications to specific requirements of this Ordinance that the application proves to the satisfaction of the Zoning Hearing Board are required under applicable Federal law to provide a "reasonable accommodation" to serve persons who the applicant proves have "disabilities" as defined in and protected by such laws.
>> 1.    Such reasonable accommodations shall be requested in accordance with the U.S. Fair Housing Act Amendments and/or the Americans with Disabilities Act, as amended.
>> 2.    If the applicant is requesting a reasonable accommodation under the United States Fair Housing Amendments Act of 1988 or the Americans with Disabilities Act, the applicant shall identify the disability which is protected by such statutes, the extent of the modification of the provisions of this Ordinance necessary for a reasonable accommodation, and the manner by which the reasonable accommodation requested may be removed when such person(s) with a protected disability no longer will be present on the property.
>> 3.    Any modification approved under this Section may be limited to the time period during which the persons with disabilities occupy or utilize the premises.

(*See Zoning Ordinance* at § 337-8(G), Docket No. 24 at 91-92).

11